United States District Court
Western District of Virginia

Raymond Tate
(plaintiff)

v.                                Case No. 7:19CV609

Regional Director D.J. Harmon
Warden M. Breckon
Unit Manager Roger Mullins
Case Manager Rodney Collins
Counselor Dink Willis
Correctional Officer B. Johnson
Correctional Officer J. Woodard
Correctional Officer John Doe
          (defendants).

CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
09/09/2019
JULIA C. DUDLEY, CLERK
BY: s/ A. Beeson
    DEPUTY CLERK

## COMPLAINT

Comes now the plaintiff, Raymond Tate, pro se, filing this complaint pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 US 388 (1971).

### I. Jurisdiction

This court has jurisdiction under 28 USC §1331 and Bivens, supra.

### II. Plaintiff

Raymond Tate #27381-001
United States Penitentiary Lee
Lee County Industrial Park
Hickory Flats Road
Pennington Gap, Virginia 24277
P.O. Box 305
Jonesville, VA 24263

### III. Defendants

All above named defendants were acting under color of federal law in the scope of their employment as agents of the Federal Bureau of Prisons during acts and omissions complained of.

1

## IV. Statement of Facts

1. I filed a lawsuit against the United States under the Federal Tort Claims Act (FTCA) in December 2015 in regards to injuries I sustained while in the custody of the Federal Bureau of Prisons (FBOP). I later amended my complaint in my lawsuit on April 4, 2018 and added a Bivens action against a prison official based on the same facts and circumstances of my FTCA claim. I was harassed and retaliated against by prison officials for my FTCA action, but I have experienced the most aggressive harassment and retaliation since the Bivens action was added.

2. I have experienced distinct, identifiable, clear, direct and indirect acts and omissions at various times, in various ways and from various prison officials in relation to and corresponding to my filing of litigation in court and prison grievances in retaliation, harassment and discrimination against me for an ongoing amount of time. I receive "positive reenforcement" when I make gestures in litigation and grievances in favor of the United States and its agents. And, I receive harassing, retaliating, discriminating acts and omissions when I make gestures in litigation or grievances unfavorable to the United States and its agents. The acts and omissions complained of in this case are only a few examples, and named defendants are not the only prison officials culpable, guilty or liable. I have experienced acts and omissions of other officials.

3. I have been in the custody of the FBOP since August 2010, and I have witnessed and experienced prison officials networking and conspiring to retaliate and discriminate against and harass inmates in a particular prison, from one prison to another, and during transit from one prison to another. Through this networking and conspiring, a prison official who wishes to adversely affect a targeted inmate(s) will do so utilizing another prison official(s) and/or inmate(s). And, prison officials exploit incidents — minor or major — for the purpose of retaliation, harassment and discrimination. This networking and conspiring was definitely at work in this case.

4. On October 22, 2018, Correctional Officer (C/O) B. Johnson filed an incident report against me in which he made false, harassing, retaliating, discriminating racial, sexual, threatening allegations against me because of my lawsuit. C/O Johnson is Caucasian-American, and he utilized the word "nigger" in reference to me in his false allegations. C/O Johnson was familiar with who I am prior to and at the time he wrote the incident report against me. He falsely accused me of making sexual acts and comments towards him and making threatening comments in regards to doing him physical harm. As a result of C/O Johnson's incident report, I was placed in the Special Housing Unit (SHU) on October 23, 2018 at approximately 8:00 a.m., and I remained there until January 23, 2019 when I was

2

released to general population. C/O Johnson's incident report was written near the time of service of process.

5. On October 23, 2018, I notified Warden Breckon that C/O Johnson made false racial, sexual, threatening allegations against me in the incident report in retaliation for my lawsuit. He did not take any action to address the issue.

6. C/O Johnson's incident report was submitted to the Federal Bureau of Investigation for consideration of federal criminal prosecution against me based on his false allegations.

7. On November 21, 2018, I had a hearing before the Discipline Hearing Officer (DHO) in regards to C/O Johnson's incident report. The DHO did not find that I committed the acts C/O Johnson falsely accused me of. Yet, I received an unreasonably stiff sanction of 180 days Loss of Commissary.

8. During my stay in the SHU, I was deprived of my legal file/materials, I was deprived of access to the Administrative Remedy Program, and I was deprived of access to the law library and assistance from a person(s) trained in the law.

9. I notified Warden Breckon, the SHU Property Officer, and the SHU Lieutenant that I was missing my legal file/materials out of my property, I needed them, and I had cases pending in court. Warden Breckon took no action to address the issue. The property officer and lieutenant told me to talk to my counselor. The lieutenant told me that he would put my written request in my counselor's box.

10. Counselor Willis was my counselor prior to and during my stay in the SHU. He had direct knowledge of my lawsuit prior to and during my stay in the SHU. Significantly, he did not receive any knowledge or information from me in regards to the existence of my lawsuit. However, prison officials—particularly those who are a part of my "Unit Team" which includes the counselor—have been in ongoing contact with Assistant United States Attorneys representing defendants in my lawsuit. He has a history of retaliating against me for filing grievances.

11. Counselors are primarily responsible for providing access to grievance forms and, in this case, my legal file/materials although the Warden is the one ultimately responsible. All requests in regards to grievance forms and my legal file/materials were always answered with the direction to "talk to your counselor."

3

12. Counselor Willis never made himself available to me while I was in the SHU. My legal file/materials were never brought to the SHU. I had to file for a stay of the proceedings in my lawsuit on two seperate occasions which the court granted both times on the grounds that I had no access to my legal file or the law library. My case was stayed 129 days.

13. When I was released from the SHU, I was assigned to a new housing unit which came with a new counselor and case manager. I first spoke with them on February 5, 2019 simultaneously. I was asked about my lawsuit; a subject initiated by them. Case Manager Rodney Collins is my new case manager.

14. I filed a motion in court in my lawsuit while the case was stayed complaining of prison officials violating my right of access to the courts by not allowing me to have my legal file/materials or access to the law library. The court ordered the United States to file and serve a status report indicating when I could expect to receive my legal file and be allowed to visit the law library. The status report was served on me by the Assistant United States Attorney who represents the defendants in my lawsuit via U.S. Mail. However, I did not receive it through normal mail procedures as I have always received my legal mail from the U.S. Attorney's office. I received it hand-to-hand delivery from Mr. Collins days later than I would have received it through normal mail procedure. Mr. Collins was directly involved in the status report as a declarant making statements about the state of my affairs prior to him being assigned as my case manager when I was neither his concern nor his responsibility. His declaration was in the nature of opposition to my allegations in my motion. It was an attempt to downplay the circumstances, change the narrative and influence my decisions in my litigation of my lawsuit.

15. My new counselor provided me with a grievance form and told me he would "check on" my legal file/materials.

16. Counselor Willis said he had "some stuff" for me and that I could go downstairs to pick it up. Unit Manager Roger Mullins's office is downstairs from Willis's office. When I went to retrieve my legal file/materials from Mullins's office, his demeanor was hostile towards me. I had two laundry bags filled to capacity with legal documents and books. Mullins contemptuously denied me a cart to carry my legal file/materials back to my housing unit. I was also denied inmate assistance in carrying my legal file/materials. The two bags were extremely heavy, and I struggled greatly to get back to my unit. When I inventoried my legal

file/materials, I was missing legal notes I had taken during legal research and legal arguments I had drafted in preparation for submittance to the court in regards to my lawsuit along with other missing items.

17. I never received written notice or a hearing in regards to my legal file/materials being confiscated.

18. Correctional Officer J. Woodard and his colleagues in the dining hall make direct and indirect harassing and retaliating comments and gestures towards me in regards to my lawsuit, other court cases and prison grievances. Woodard and his colleagues make "positive" and negative comments and gestures towards me in relation to my litigation of my court cases—especially and particularly my lawsuit—and prison grievances. When I file and/or make gestures in favor of the United States and its agents, their response is "positive" towards me. When I file and/or make gestures not favorable to the United States and its agents, their response is negative, harassing and retaliating towards me. All of their acts and omissions are harassing and retaliating no matter whether they are meant to be so-called "positive reenforcement" or negative to deter. Woodard and his colleagues are familiar with who I am because I worked in the dining hall for Woodard. He initiated false sexual allegations against me.

19. I have heard Warden Breckon often brag that his Special Housing Unit (SHU) is the worst SHU that anybody will ever be in. I bear witness that as far as my experience goes he was correct. Inmates in the SHU are regularly beaten and abused physically. SHU staff daily harass and retaliate against inmates verbally as well. SHU staff does not provide cleaning supplies to clean the filthy cells with. Inmates sleep on metal or one inch thick pieces of filthy cotton half the length of the body. There is mold and fungus in the cells. I saw an inmate infested with staphylococcus. Cell rotations were conducted about every 18 days. SHU staff would incite and attempt to incite inmate-on-inmate violence in harassment and retaliation. SHU staff did not provide adequate hygiene products. Inmates were only allowed about a four inch pencil made of flexible rubber-like material with no pencil sharpener. Filing any substantial amount of paperwork less lengthy as this complaint is impossible. SHU staff harass and retaliate against inmates for filing or attempting to file grievances. There are a host of other degenerate conditions and acts and omissions of harassing and retaliating staff in the SHU. Complaints in regards to SHU conditions were made to Warden Breckon at least weekly, yet he took no action to address those conditions. I was confined 24 hours a day in my cell in the SHU. I lost liberty and privileges in the SHU that I would have retained in general population.

20. Correctional Officer John Doe harassed and retaliated against me while I was in the SHU along with his SHU colleagues although I was not causing any trouble. C/O Doe would repeat the false sexual allegations of his colleagues against me to me and other inmates in the SHU to shame me and incite inmate-on-inmate violence against me. He harassed and retaliated against me when I received the Process Receipt and Return forms (USM-285) from the United States Marshals Service notifying me that the prison official-defendant in the Bivens action had been served process in the lawsuit.

21. I filed a grievance in regards to SHU and general population conditions, me being deprived of my legal file/materials and the conspiracy against my rights. Regional Director D.J. Harmon alleged to have taken "appropriate action," yet issues I grieved about continued. And, Harmon did not address the issues of the conspiracy against my rights and me being deprived of my legal materials among other unaddressed issues.

22. I filed a grievance in regards to Mr. Collins interfering with my mail correspondence with the U.S. Attorney's office in regards to my lawsuit as a part of the conspiracy against my rights. Warden Breckon did not thoroughly investigate the issues, he acquiesced in the acts and omissions I complained of and he did not take any action to correct or discipline. Regional Director Harmon acquiesced in Warden Breckon's response which is a de facto acquiesence in Mr. Collins's interference with my mail and they conspiracy against my rights.

23. Both of my grievances were appealed all the way through the final appeal stage of the FBOP's Central Office.

24. I have been in the custody of the FBOP since August 2010, and my placement in the SHU on October 23, 2018 was my first time being placed in the SHU on a disciplinary matter. I have been here at United States Penitentiary Lee since June 29, 2016, and both C/O Johnson's incident report and my placement in the SHU as a result of the incident report were my first, at this prison. Yet, I witnessed other inmates being admitted and released from the SHU two or three times for Greater Severity Prohibited Acts while I was in the SHU. Those Greater Severity Acts includes but is not limited to: assaults, weapons and drugs. My infraction—Interfering with the Taking of Count—was a lesser severity act. I also witnessed other inmates in the SHU with possession of their legal file/materials and access to the law library.

6

25. Due to the defendants' acts and omissions, I suffered injuries in the form of my Fifth and Eighth Amendment rights being violated; my access to the court and the litigation of my lawsuit was impeded for 129 days; my lawsuit was brought to the precipice of being bungled; I was deprived of my legal materials for over three months; my legal materials were confiscated and not returned to me; I was deprived of access to the Administrative Remedy Program; I was sexually and racially harassed and retaliated against; I was subjected to false sexual, racial, threatening allegations; I was racially and sexually discriminated against; I was subjected to character assassination, defamation of character and damage to my reputation; I was retaliated against for filing lawsuits and grievances; I was subjected to referral to the Federal Bureau of Investigation for consideration of federal criminal prosecution; I lost liberty and privileges for the 92 days I was confined in the SHU; I was subjected to degenerate prison conditions that exposed me to an unreasonable, substantial risk of serious harm; I was subjected to consideration of transferral.

## V. Declaration

I declare under penalty of perjury that all above facts in this Complaint are true and correct. Executed on 8-15-2019. /s/ Raymond Tate. See 28 USC §1746.

## VI. Claims for Relief

26. Regional Director D.J. Harmon is liable for the violation of my Fifth and Eighth Amendment rights.

27. Warden Breckon is liable for the violation of my Fifth and Eighth Amendment rights.

28. Unit Manager Mullins is liable for the violation of my Fifth and Eighth Amendment rights.

29. Case Manager Collins is liable for the violation of my Fifth and Eighth Amendment rights.

30. Counselor Willis is liable for the violation of my Fifth and Eighth Amendment rights.

31. Correctional Officer Woodard is liable for the violation of my Fifth and Eighth Amendment rights.

32. Correctional Officer Johnson is liable for the violation of my Fifth and Eighth Amendment rights.

33. Correctional Officer John Doe is liable for the violation of my Fifth and Eighth Amendment rights.

34. The acts and omissions of Harmon, Breckon, Mullins, Collins, Willis, Woodard, Johnson and Doe was a conspiracy that violated my Fifth and Eighth Amendment rights.

35. I sustained injuries as a result of the defendants' violations of my Fifth and Eighth Amendment rights. See paragraph #25 above.

36. I was deprived of liberty and property without due process of law, and I was subjected to cruel and unusual punishment.

## VII. Requested Relief

Plaintiff requests that the court grant the following relief:

37. Declare defendants Harmon, Breckon, Mullins, Collins, Willis, Woodard, Johnson, and Doe are liable for the violation of my Fifth and Eighth Amendment rights.

38. Award Plaintiff compensatory damages:
   a) $500,000 (five hundred thousand dollars) against each defendant in individual capacity for injuries I sustained as a result of the violation of my Fifth Amendment rights.
   b) $500,000 (five hundred thousand dollars) against each defendant in individual capacity for injuries I sustained as a result of the violation of my Eighth Amendment rights.
   c) $500,000 (five hundred thousand dollars) against each defendant in individual capacity for injuries I sustained as a result of their conspiracy that violated my Fifth Amendment rights.
   d) $500,000 (five hundred thousand dollars) against each defendant in individual capacity for injuries I sustained as a result of their conspiracy that violated my Eighth Amendment rights.

39. Award Plaintiff punitive damages:
   a) $1,000,000 (one million dollars) against each defendant in individual capacity for violating my Fifth Amendment rights.
   b) $1,000,000 (one million dollars) against each defendant in individual capacity for violating my Eighth Amendment rights.
   c) $1,000,000 (one million dollars) against each defendant in individual capacity for violating my Fifth Amendment rights as a result of their conspiracy.
   d) $1,000,000 (one million dollars) against each defendant in individual capacity for violating my Eighth Amendment rights as a result of their conspiracy.

All above punitive damages should be awarded to punish the defendants for their malicious, intentional, reprehensible conduct that displayed reckless, callous, deliberate indifference to my rights and deter them and others from committing the same or similar acts and omissions in the future.

**40. Injunctive Relief**

Issue a preliminary and permanent injunction against each defendant in their official capacity to prohibit acts and omissions complained of and future acts and omissions designed to have the same effects of the acts and omissions complained of that violate my rights. See attached Motion for a Preliminary and Permanent Injunction below on pages 10-11.

Respectfully submitted,
*Raymond Tate*
Raymond Tate #27381-001
USP Lee
P.O. Box 305
Jonesville, VA 24263

**CERTIFICATE OF SERVICE**

On September 4, 2019, this Complaint was delivered to prison officials as legal mail, first class postage prepaid, to be sent to the United States District Court, Western District of Virginia, 210 Franklin Road SW, Suite 540, Roanoke, VA 24011. I declare under penalty of perjury that the foregoing is true and correct. Executed on 9-4-2019.
*Raymond Tate*. See 28 USC §1746.

Raymond Tate #27381-001
United States Penitentiary Lee
P.O. Box 305
Jonesville, VA 24263

United States District Court
210 Franklin Road SW, Suite 540
Roanoke, VA 24011