**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

| | | |
|---|---|---|
| RAYMOND TATE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 7:19-cv-00609 |
| | ) | |
| D. J. HARMON, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

**<u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'</u>**
**<u>MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT</u>**

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 3

STATEMENT OF FACTS ............................................................................................... 5

STANDARDS OF REVIEW ........................................................................................... 6

   I.   Rule 12(b)(1) Lack of Subject Matter Jurisdiction ............................................. 6

   II.   Rule 12(b)(2) Lack of Personal Jurisdiction ....................................................... 6

   III.   Rule 12(b)(6) Failure to State a Claim .............................................................. 7

ARGUMENT ................................................................................................................... 8

   I.   The Court lacks subject matter jurisdiction over claims against United States. ................. 8

   II.   Tate Lacks Standing ........................................................................................... 9

     A.   The Prison Litigation Reform Act prohibits compensatory damages absent physical injuries. ........................................................................................................................... 9

     B.   Tate's request for injunctive relief is unavailable. ....................................... 10

     C.   Tate cannot bring claims on behalf of other inmates. ................................... 11

   III.   Tate failed to exhaust his claims as required by the PLRA. ........................... 11

   IV.   The Court Lacks Personal Jurisdiction Over Defendant Harmon ................... 14

   V.   Tate Failed to State a Claim upon Which Relief Could Be Granted ............... 15

     A.   Tate's allegations are not cognizable under *Bivens*. ..................................... 15

       i.   Tate's allegations differ in a meaningful way from previous *Bivens* cases. .............. 16

       ii.   Special Factors Analysis ............................................................................ 18

     B.   Tate fails to allege any constitutional violation. ......................................... 21

       i.   Tate fails to state a constitutional violation for his retaliation claim ......................... 22

       ii.   Tate fails to state a constitutional violation related to his property. ........................ 23

       iii.   Tate failed to allege any injury from the loss of legal mail and denial of access to law library, and thus does not state a constitutional violation. ........................................... 24

       iv.   False disciplinary reports do not give rise to a constitutional violation. ................ 25

       v.   Placement in the SHU and consideration for transfer do not give rise to a constitutional violation. ................................................................................................... 25

       vi.   Verbal harassment or derogatory language is not a constitutional violation. ......... 26

       vii.   Access to commissary is not a constitutional right. ................................ 27

       viii.   Tate failed to allege an Eighth Amendment violation. ......................... 27

       ix.   Tate did not allege a due process violation. ......................................... 28

        x.   Tate failed to make an Equal Protection Clause claim. ............................................. 29

    C.   Respondeat superior liability is unavailable against Breckon and Harmon. .................. 30

  VI.   Defendants Are Entitled to Qualified Immunity ........................................................ 31

**CONCLUSION** ..................................................................................................................... 32

## INTRODUCTION

Plaintiff Raymond Tate is a federal inmate at U.S. Penitentiary (USP) Lee. Tate brought this suit as a civil rights action pursuant to *Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), alleging Defendants retaliated against him in various ways for pursuing legal claims in violation of his Fifth and Eighth Amendment rights. Compl., ECF No. 1. After Defendants moved to dismiss the Complaint, Tate filed an Amended Complaint adding an allegation of violations of his First Amendment rights and naming five additional defendants, including the United States. Am. Compl., ECF No. 31. One of the named defendants is "John Doe," who has not been identified at this time.[1]

Defendants, current and former U.S. Bureau of Prisons (BOP) staff and the United States, submit this Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiff's Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6) in accordance with Rule 15(a)(3).[2]

---

[1]      Because John Doe has not been identified, the Department of Justice cannot represent him at this time. Defendants submit, however, that the Amended Complaint fails in its entirety for the reasons set forth herein.

[2]      In response to Defendants' Motion to Dismiss (ECF No. 28), Plaintiff filed an Amended Complaint in a futile attempt to correct the fatal errors in his initial complaint. ECF No. 31. Plaintiff also filed a Response in Opposition to Defendants' Motion to Dismiss. ECF No. 34. Because Plaintiff amended his complaint, however, Defendants must file a new motion to dismiss pursuant to Federal Rule of Civil Procedure 15(a)(3), and Plaintiff will need to respond to the Motion to

First, the Court lacks subject matter jurisdiction over the United States because the United States has not waived its sovereign immunity.

Second, Tate lacks standing for all his claims because he seeks compensatory damages for all his claims absent physical injury, which is prohibited by PLRA. Additionally, his requested injunctive relief is unavailable because it seeks to change BOP policies and procedures—a type of relief that is not available in a *Bivens* case. Because all Tate's requested relief is unavailable— compensatory damages and injunctive relief—he failed to establish the requisite redressability prong of standing, thus divesting this Court of subject matter jurisdiction over all his claims. Moreover, he lacks standing to bring claims on behalf of other inmates at USP Lee.

Third, Tate's claim against Defendant Harmon must be dismissed because the Court lacks personal jurisdiction over Defendant Harmon who has insufficient contacts with Virginia.

Fourth, Tate failed to exhaust his administrative remedies for his claim related to the alleged March 1, 2020 staff harassment. As such, the Prison Litigation Reform Act (PLRA) precludes that claim.

Fifth, Tate failed to state a claim upon which relief can be granted. His allegations do not comport with existing *Bivens* cases establishing liability, and such a remedy should not be extended to the facts alleged in this case because several special factors weigh against doing so. Moreover, none of Tate's allegations—even if taken as true—amounts to a constitutional violation.

Last, Defendants are entitled to qualified immunity because Tate failed to allege a constitutional violation. As such, several, independent reasons exist for dismissing Tate's Complaint with prejudice.

---

Dismiss the Amended Complaint. As such, Defendants will not respond to Plaintiff's Response in Opposition to the first Motion to Dismiss until Plaintiff files a Response in Opposition to the Motion to Dismiss the Amended Complaint.

## STATEMENT OF FACTS

Tate, currently housed at USP Lee, sued several BOP Staff in the present suit: (1) Regional Counsel D. J. Harmon, (2) Retired Warden M. Breckon, (3) Senior Officer B. Johnson, (4) Unit Manager R. Mullins; (5) Correctional Counselor D. Willis, (6) Case Manager Rodney Collins, (7) Cook Foreman J. Woodard; (8) Lieutenant M. Hamilton; (9) Property Office S.W. White; (10) Correctional Officer S. Hutchins; (11) Correctional Office J. Robbins;[3] and (12) Correctional Officer John Doe. Am. Compl., ECF No. 31. Tate also sued the United States, but noted it "is named as a defendant for purposes of injunctive relief only." *Id.* at 1.

Tate generally alleges that Defendants violated his First, Fifth, and Eighth Amendment rights. Am. Compl. ¶¶ 82–86. To support these conclusory allegations, he claims staff at USP Lee have (1) retaliated and discriminated against him and other inmates in BOP custody, (2) falsified an incident report against him, (3) used abusive language towards him, (4) placed him in the Special Housing Unit (SHU), (5) referred him to the FBI for consideration for prosecution on false charges, (6) restricted his access to commissary as a result of false incident reports, (7) deprived him of his legal materials and hindered his access to the courts, (8) blocked his access to the administrative remedy process, (9) interfered with his legal mail, (10) lost his legal property, (11) refused to assist him in transporting his legal property, (12) subjected him to consideration for transfer, (13) harassed and discriminated against him based on his sex and race, (14) generally retaliated against him in these manners as a result of him filing law suits regarding the circumstances of his incarceration; and (15) subjected him to uncomfortable conditions in the

---

[3]    There are two Correctional Officers with a first initial J and last name Robbins as USP Lee. Because Tate failed to adequately identify Defendant Robbins, the Government reserves the opportunity to raise additional arguments in defense of Defendant Robbins when he is properly identified.

SHU, such as uncleanliness, too cold, cancelling recreation time, uncomfortable mattress, and not enough toilet paper. *See generally id.*

Tate seeks $500,000 in compensatory damages from each defendant except the United States, $1 million in punitive damages from each defendant except the United States, and a "permanent injunction against each defendant in their official capacity to prohibit acts and omissions complained of." *Id.* ¶¶ 87–90.

## STANDARDS OF REVIEW

### I.      Rule 12(b)(1) Lack of Subject Matter Jurisdiction

Subject matter jurisdiction is a threshold issue, and the Court must address it before reaching the merits of the case. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95–102 (1998); *accord Jones v. Am. Postal Workers Union*, 192 F.3d 417, 422 (4th Cir. 1999).[4] The party asserting jurisdiction bears the burden of proving jurisdiction. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). A district court should grant a Rule 12(b)(1) motion to dismiss "if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.*; *see also Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).

### II.     Rule 12(b)(2) Lack of Personal Jurisdiction

"[T]he plaintiff bears the burden of demonstrating personal jurisdiction at every stage following such a challenge." *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016). "[T]he court must take the allegations and available evidence relating to personal jurisdiction in the light most favorable to the plaintiff." *Id.* at 268. In considering personal jurisdiction, courts employ a two-part inquiry: (1) whether the forum state's long-arm statute provides jurisdiction, and (2) whether

---

[4]      Internal quotation marks and citations omitted throughout.

exercising jurisdiction would violate defendant's due process. *Wolf v. Richmond Cty. Hosp. Auth.*, 745 F.2d 904, 909 (4th Cir. 1984). "Because Virginia's long-arm statute extends personal jurisdiction to the extent permitted by the Due Process Clause, 'the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one.'" *Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002).

### III.      Rule 12(b)(6) Failure to State a Claim

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint. *Republican Party of N.C. v. Martin,* 980 F.2d 943, 952 (4th Cir. 1992). While the Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,'" it must be sufficient to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). The "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face," rather than merely "conceivable." *Id.* at 570. In considering such a motion, the Court takes the plaintiff's well-pleaded allegations as true and views the complaint in the light most favorable to the plaintiff. *T.G. Slater & Son v. Donald P. & Patricia A. Brennan LLC,* 385 F.3d 836, 841 (4th Cir. 2004). Legal conclusions, however, enjoy no such deference. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *see also Young v. City of Mount Ranier*, 238 F.3d 567, 577 (4th Cir. 2001) ("The presence, however, of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support [the legal conclusion] . . . ."). Further, the court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Markets v. J.D. Assoc. Ltd.*, 213 F.3d 175, 180 (4th Cir. 2000).

Stated plainly, a court should dismiss a complaint if it appears beyond doubt "that the plaintiff can prove no set of facts which would support its claim and would entitle [him] to relief." *Franks v. Ross*, 313 F.3d 184, 192 (4th Cir. 2002).

## ARGUMENT

### I.      The Court lacks subject matter jurisdiction over claims against United States.

As a sovereign, the United States is immune from suit unless it consents to being sued. *United States v. Sherwood*, 312 U.S. 584, 586 (1941). When the United States consents to suit for a class of cases, the terms of its consent circumscribe the Court's jurisdiction to entertain a particular suit. *Id.* at 586–87; *see also United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."). "A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text and will not be implied." *Lane v. Pena*, 518 U.S. 187, 192 (1996); *see also United States v. Nordic Village, Inc.*, 503 U.S. 30, 33–34 (1992).

Here, Tate makes no allegations against the United States. He added the United States as a defendant in his Amended Complaint, with a footnote stating, "The United States of America is named as a defendant for purposes of injunctive relief only." Am. Compl. at 1. Setting aside the absence of factual allegations against the United States, he makes no allegations that could conceivably be considered a waiver of the United States' sovereign immunity. Without any such waiver, the Court lacks subject matter jurisdiction and the complaint against the United States must be dismissed.

## II.    Tate Lacks Standing

The doctrine of standing "subsumes a blend of constitutional requirements and prudential considerations." *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982). Constitutional standing requires (1) a concrete and particularized injury-in-fact, (2) a causal connection between the injury and the defendant's challenged conduct, and (3) a likelihood that the injury suffered will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Here, Plaintiff's requested monetary damages and injunctive relief are unavailable to him under the law, and thus, he fails to meet the third prong of redressability to establish constitutional standing. As such, the Court lacks subject matter jurisdiction over all Tate's claims.

### A. The Prison Litigation Reform Act prohibits compensatory damages absent physical injuries.

The PLRA prohibits prisoners from receiving compensatory damages "for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." 42 U.S.C. § 1997e(e). Tate's only allegation of injury is the conclusory assertion that "[he] suffered injuries in the form of [his] First, Fifth, and Eighth Amendment rights being violated." Am. Compl. ¶ 81. Tate's Complaint fails to allege any physical injury. *See generally id*. Thus, the only injury Tate could be seeking compensatory damages for is mental or emotional injury. Because the PLRA prohibits damages for mental or emotional injury absent physical injury, monetary relief is unavailable to Tate. *See, e.g.*, *Allah v. Al-Hafeez*, 226 F.3d 247, 250 (3d Cir. 2000) (dismissing a prisoner's claims for compensatory damages for violations of his right to free exercise of religion because he failed to allege physical injury); *Godbey v. Wilson*, 2014 WL 794274, at *7 (E.D. Va. Feb. 26, 2014) (dismissing a prisoner's *Bivens* claims because he failed to alleged any physical injuries as the result of the conduct he challenged,

among other reasons); *Ahann-Ra v. Commonwealth of Va.*, 112 F. Supp. 2d 559, 566 (W.D. Va. 2000) (dismissing a prisoner's § 1983 complaint for failure to allege any physical injury). Therefore, Tate's lack of physical injury precludes compensatory damages, making his requested relief unavailable and his alleged harm is not redressible by a favorable decision, and he lacks standing.

### B.  Tate's request for injunctive relief is unavailable.

Tate also requests injunctive relief "against each defendant in their official capacity to prohibit acts and omissions complained of and future acts and omissions that have the same effects of the acts and omissions complained of." Am. Compl. ¶ 90. First, the requested injunctive relief is not directed at Defendants in their individual capacities. Instead, it is directed to Defendants in their official capacities, and thus, directed at USP Lee and BOP. Tate added the United States as a defendant in his Amended Complaint in an unfruitful attempt to remedy this fatal flaw. *Id.* As discussed in Section I above, the United States has not waived its sovereign immunity and cannot be a party to this action. The Court cannot direct injunctive relief to these non-parties of this litigation—USP Lee and BOP—without a showing the non-party is "in active party or participation" with the party against whom injunctive relief is sought. Fed. R. Civ. P. 65(d)(2); *see also Little v. Assoc. Tech. Training Servs., Inc.*, 12 F.3d 205, 1993 WL 498282, at *4 (4th Cir. 1993) (per curiam) ("[C]ourts have recognized limitations on their ability to bind non-parties with injunctions."); *Booze v. Wetzel*, 2012 WL 6137561, at *4 (M.D. Pa. Nov. 16, 2012) (denying inmate's request for a preliminary injunction that he sought against non-parties). Tate has made no such showing here to justify an injunction against non-parties.

Moreover, even if USP Lee and BOP could be considered non-parties acting in concert with Defendants, *Bivens* actions, which sue federal actors in their individual capacities for alleged

constitutional violations, "have never [been] considered a proper vehicle for altering an entity's policy." *Tun-Cos v. Perrotte*, 922 F.3d 514, 527 (4th Cir. 2019). The injunctive relief Tate seeks attempts to alter the policies and discretion BOP has, prescribed by Congress, to operate federal prisons safely and efficiently.

Additionally, even if the Court found it could order this injunctive relief with the present parties to the litigation, Defendant Breckon is no longer employed at BOP. Thus, an injunction against Defendant Breckon would not remedy Tate's alleged harms or his fear of similar future harms. As such, this requested injunctive relief is also unavailable to Tate.

Because all of the relief Tate requests is unavailable to him, he cannot establish redressability for standing. Without standing, the Court lacks subject matter jurisdiction.

### C. Tate cannot bring claims on behalf of other inmates.

Tate alleges BOP staff were generally "networking and conspiring to retaliate against and harass inmates" and alleges various events against *other* inmates he observed. Am. Compl. ¶¶ 3, 22-34. A pro se litigant, however, cannot act as a "knight-errant" for other inmates, and his suit is "confined to redress for violation of his own personal rights." *Hummer v. Dalton*, 657 F.2d 621, 625–626 (4th Cir. 1981); *see also Douglas v. Goodlander*, 2012 WL 3544315, at *1 (D. Md. Aug. 14, 2012) ("To the extent plaintiff might intend to raise claims on behalf of other inmates, he has no standing to do so."). Because Tate does not have standing to sue on behalf of other inmates for perceived violations of others' rights, the Court lacks subject matter jurisdiction over those claims.

### III.    Tate failed to exhaust his claims as required by the PLRA.

Although Tate filed requests for administrative remedies, he has not exhausted the administrative remedies for all of his claims. The Prison Litigation Reform Act (PLRA) states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or

11

any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility *until such administrative remedies as are available are exhausted.*" 42 U.S.C. § 1997e(a) (emphasis added). Exhaustion of administrative remedies is mandatory and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see also Tillman v. Allen*, 187 F. Supp. 3d 664, 672–75 (E.D. Va. 2016) (dismissing several of plaintiff's claims under RLUIPA due to failure to exhaust administrative remedies). Further, administratively prescribed timelines and procedures for administrative remedies must be followed, and failure to do so will be considered a failure to exhaust administrative remedies. *See Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.").

An inmate may seek a formal review of an issue or complaint relating to his confinement through BOP's administrative remedy program. First, the inmate must "present an issue of concern informally to the staff," and each Warden has established procedures to do so. 28 C.F.R. § 542.13(a). If an inmate is unable to resolve his complaint informally, he may file a formal written complaint with the institution on the proper form within twenty calendar days of the incident at issue. *Id.* § 542.14(a). If an inmate is not satisfied with the institutional Warden's response, he may appeal, using the appropriate form, to the Regional Director within twenty calendar days of the Warden's response. *Id.* § 542.15(a). If the inmate is still not satisfied, he may appeal the Regional Director's response to the Office of General Counsel, using the appropriate forms, within thirty calendar days of the date the Regional Director signed the response. *Id.* Appeal to the General Counsel is the final administrative appeal. *Id.* § 542.15(a).

Although Tate has filed for many administrative remedies during his incarceration, he has not exhausted all the claims in this Complaint. An inmate's Administrative Remedy filing history is available for review through SENTRY as an Administrative Remedy Generalized Retrieval Form. *See* Spearen Decl. ¶ 3, Ex. 1. The administrative remedy numbers identify at what level the remedy was filed and the number of times the remedy was filed at that level. A remedy filed at the institution level is identified by an F, at the Regional Office level an R, and at the Central Office level an A. An initial remedy filed at the institution level is assigned an F1. If the administrative remedy is rejected and re-filed at the institutional level, the re-filed remedy is identified as F2. *Id.*

Tate has filed or attempted to file nine administrative remedies while at USP Lee. *Id.* Attach. C. As noted in the Administrative Remedy Generalized Retrieval Form, the only remedies that have been exhausted are those designated with an "A": April 29, 2019 claim of staff misconduct; May 28, 2019 claim of harassment/retaliation/threat/IR issues; and May 28, 2019 claim of wrong procedure done with legal mail. *Id.* These allegations were made in Tate's original Complaint filed on September 9, 2019, and are the only claims for which Tate has exhausted his administrative remedies as required by the PLRA.

Since the filing of his initial Complaint on September 9, 2019, Tate filed another administrative remedy on March 19, 2020, alleging staff harassment. *Id.* These new allegations are in Tate's Amended Complaint, filed April 9, 2020. Am. Compl. ¶ 80. On March 31, 2020, however, Tate received the Warden's response to his administrative remedy, and Tate has not filed any appeals. Because Tate has not exhausted his administrative remedies as to this claim, this claim must fail.

## IV.     The Court Lacks Personal Jurisdiction Over Defendant Harmon

Tate names Regional Director Harmon as a defendant, but Regional Director Harmon lacks minimum contacts with Virginia for this Court to exercise personal jurisdiction over him. Because Virginia's long-arm statute extends personal jurisdiction to the extent permitted by the Due Process Clause, the inquiry applies the minimum contacts test. *Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002).

The canonical opinion remains *International Shoe v. Washington*, 326 U.S. 310 (1945), in which the Supreme Court held that courts may exercise personal jurisdiction over a defendant if the defendant has "certain minimum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* at 316. The minimum contacts test is satisfied and a Court will have general jurisdiction over a defendant if he has such ongoing systematic dealings within the state as to render him essentially at home in the forum state. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *Daimler AG v. Bauman*, 571 U.S. 117, 138 (2014). If the Court does not have general jurisdiction over a defendant, the minimum contacts test may still be satisfied and give rise to specific jurisdiction over the defendant "based on conduct connected to the suit." *ALS Scan, Inc. v. Dig. Serv. Consultants, Inc.*, 293 F.3d 707, 711 (4th Cir. 2002). Here, the Court has neither general nor specific personal jurisdiction over Defendant Harmon.

Defendant Harmon lives and works in Maryland, and oversees all BOP institutions in Maryland, Kentucky, North Carolina, Tennessee, Virginia, and West Virginia. Such activities overseeing institutions do not rise to the level of purposeful availment sufficient to create personal jurisdiction in Virginia. "[C]ourts have held that mere allegations relating to a BOP official's supervisory activities over a facility inside the forum state are insufficient to establish personal

jurisdiction." *Wall v. Black*, 2009 WL 3215344, at *8 (S.D. Miss. Sept. 30, 2009) (collecting cases). Additionally, Tate only makes two factual allegations against Defendant Harmon, which do not allege any conduct in Virginia. *See* Am. Compl. ¶ 57 ("Regional Director D.J. Harmon responded to my February 5, 2019 "Sensitive" BP-10."); *id.* ¶ 60 ("Harmon denied my appeal."). This does not give rise to specific personal jurisdiction. *See Scurlock v. Lappin*, 2013 WL 4508343, at *2 n.6 (W.D. Va. Aug. 23, 2013) (Moon, J.) (noting the court lacked personal jurisdiction over the Northeast Regional Director of BOP in Philadelphia, and the Director of BOP in Washington, D.C.). As such, the Court lacks personal jurisdiction over Defendant Harmon.

## V.    Tate Failed to State a Claim upon Which Relief Could Be Granted

### A.  Tate's allegations are not cognizable under *Bivens*.

Tate makes the general allegation that Defendants violated Tate's First, Fifth, and Eighth Amendment rights, which he supports with various factual assertions. *See generally* Am. Compl. Independent of the reasons for dismissal discussed above, none of the factual allegations is a cognizable *Bivens* claim because the alleged constitutional violations differ in meaningful ways from the Supreme Court's prior *Bivens* cases.

*Bivens* provides an implied remedy against federal officials for damages to remedy a constitutional violation. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855–56 (2017). To determine whether a claim may proceed under *Bivens*, the Court must consider whether the present case differs in a "meaningful way from previous *Bivens* cases decided by [the Supreme Court]." *Id.* at 1859. The Court has approved three types of *Bivens* claims, which involved violations of the Fourth, Fifth, and Eighth Amendments: "[A] claim against FBI agents for handcuffing a man in his own home without a warrant; a claim against a Congressman for firing his female secretary; and a claim against prison officials for failure to treat an inmate's asthma." *Id.* at 1860.

If the present case differs in a meaningful way from previous *Bivens* cases, the court must conduct a special factors analysis. *See id.* at 1857 ("[T]he Court has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity."). As the Supreme Court recently explained in *Hernandez v. Mesa*, "[i]f there are [special factors]—that is, if we have reason to pause before applying *Bivens* in a new context or to a new class of defendants—we reject the request." 170 S. Ct. 735, 743. The special factors analysis first considers "whether there [are] alternative remedies available or other sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy in a suit like this one." *Ziglar*, 137 S. Ct. at 1865. Second, the analysis considers whether special factors counsel against creating a new cause of action under *Bivens*. *See id.* at 1857 ("The Court's precedents now make clear that a *Bivens* remedy will not be available if there are special factors counselling hesitation in the absence of affirmative action by Congress.").

### i.     Tate's allegations differ in a meaningful way from previous *Bivens* cases.

"A claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Hernandez*, 140 S. Ct. at 744. Therefore, the court must engage in a factual analysis to determine whether the facts underlying the alleged constitutional violation are "meaningfully different" from the facts and context of previous *Bivens* cases. *Id.*

The Supreme Court has extended *Bivens* liability in only three factual scenarios. In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the Court found an implied claim for money damages under the Fourth Amendment where federal officers searched the plaintiff's apartment and arrested him for alleged narcotics violations without a warrant or probable cause and the officers used unreasonable force in doing so. In *Davis v. Passman*, 442 U.S. 228 (1979), the Court found the equal protection component of the Fifth

Amendment's Due Process Clause provided a damages remedy for an administrative assistant who alleged that a Congressman fired her because she was a woman. In *Carlson v. Green*, 446 U.S. 14 (1980), the Court held the Eight Amendment provided a damages remedy for a prisoner who died due to the alleged failure of federal prison staff to treat his asthma. "In the almost 40 years since *Carlson*, however, the Court has declined to countenance *Bivens* actions in *any* additional context." *Tun-Cos v. Perrotte*, 922 F.3d 514, 521 (4th Cir. 2019), *cert. filed*, No. 19-661 (Nov. 22, 2019).

None of these three factual scenarios involved violations of one's First Amendment rights. Accordingly, the Supreme Court has declined to extend *Bivens* remedies to First Amendment claims. *See Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) ("[W]e have declined to extend *Bivens* to a claim sounding in the First Amendment." (citing *Bush v. Lucas*, 462 U.S. 367 (1983)); *Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012) ("We have never held that *Bivens* extends to First Amendment claims."); *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001) ("[W]e declined to create a *Bivens* remedy against individual Government officials for a First Amendment violation arising in the context of federal employment.").

Additionally, none of the facts Tate alleges here for violations of his Fifth and Eighth Amendment rights are similar to those violations alleged in *Davis* or *Carlson*. None of Tate's allegations can be deemed similar to the facts of *Davis*, which did not occur in a prison and involved the loss of employment. In fact, the Supreme Court rejected a *Bivens* remedy for alleged Fifth Amendment violations premised on harsh conditions of confinement and alleged abuse by prison guards. *Ziglar*, 137 S. Ct. at 1851–53. Therefore, Tate's Fifth Amendment claims regarding conditions of his imprisonment are meaningfully different from *Davis*.

Tate's Eighth Amendment allegations also cannot be deemed similar to the facts of *Carlson*. Tate makes numerous allegations regarding the conditions of his confinement:

Defendants retaliated and discriminated against him, used abusive language towards him, placed him in the SHU, "degenerate" conditions in the SHU, referral to the FBI for consideration of false charges, restricted his access to commissary, deprived him of his legal materials and hindered his access to the courts, blocked his access to the administrative remedy process, interfered with his legal mail, refused to assist him in transporting his legal property, and subjected him to consideration for transfer. None of these allegations, however, involved "grossly inadequate" medical care and the deliberate failure of prison officials to provide medical attention as it was in *Carlson*. Therefore, Tate's Eighth Amendment claims are meaningfully different from *Carlson*.

"[E]ven a modest extension [of *Bivens*] is still an extension." *Ziglar*, 137 S. Ct. at 1864. Because all of Tate's claims present a new context, the Court must conduct a special factors analysis to determine carefully whether *Bivens* should be extended here. *See id.* at 1857 ("[T]he Court has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity.").

### ii. Special Factors Analysis

Here, several special factors weigh against applying *Bivens* in this context, including the availability of alternative remedies, congressional intent in amending the PLRA, and the impact on governmental operations.

First, if there are any alternative remedies available other than expanding *Bivens*, the Court should not infer a new *Bivens* context. *See id.* at 1858 ("[I]f there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action."); *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007) ("[A]ny alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages."). "Alternative remedies can include

administrative, statutory, equitable, and state law remedies." *Johnson v. Johnson*, 2018 WL 4374231, at *9 (S.D.W. Va. June 5, 2018).

Tate has several alternative remedies. Through the BOP Administrative Remedy Program (ARP), Tate may seek review of "any aspect of his[] own confinement" and appeal the disciplinary proceedings that resulted in his placement in the SHU. 28 C.F.R. §§ 542.10, 541.7. Moreover, Congress made the ARP mandatory through the PLRA. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions . . . until such administrative remedies as are available are exhausted."). The availability of the ARP weighs against extending *Bivens* here. *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001) (declining to extend *Bivens* to a new context in part because the ARP was an available remedy); *Vega v. United States*, 881 F.3d 1146, 1154 (9th Cir. 2018) (finding alternative means of relief existed through the ARP for alleged violations of First and Fifth Amendment rights, which weighed against extending *Bivens* remedy).

Similarly, habeas relief is an alternative remedy available to Tate. In fact, if a suit challenges the fact or duration of confinement, a habeas action is the exclusive remedy. *Harvey v. Horan*, 270 F.3d 370 (4th Cir. 2002). Certain of Tate's claims are best suited for habeas relief. For example, a habeas petition for Tate's allegation that he was subject to discipline for a false incident report could lead to the expungement and removal of the disciplinary action from his record.

State tort law also provides an alternative means of relief. *See Minneci v. Pollard*, 565 U.S. 118, 127–130 (2012) (recognizing availability of remedy of state tort law and that "[s]tate-law remedies and a potential *Bivens* remedy need not be perfectly congruent"). Therefore, Tate has three alternative remedies available to him, which is a "convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Wilkie*, 551 U.S. at 550.

19

Second, "legislative action suggesting that Congress does not want a damages remedy is itself a factor counseling hesitation." *Ziglar*, 137 S. Ct. at 1865. The PLRA enacted a variety of reforms. Despite the PLRA's sweeping reform, Congress did not provide a damage remedy to prisoners for constitutional claims. This inaction by Congress is a special factor counseling hesitation in recognizing a new implied cause of action under *Bivens*. *See Hernandez*, 140 S. Ct. at 747 (noting it was "telling" that Congress "repeatedly declined to authorize" the type of damages the plaintiffs sought); *Tun-Cos*, 922 F.3d at 527 ("Congress's legislative actions in this area persuasively indicate that Congress did not want a money damages remedy against ICE agents for their allegedly wrongful conduct, as indicated by its frequent amendment of the INA and its repeated refusal to provide a damages remedy."). "So it seems clear that Congress had specific occasion to consider the matter of prisoner abuse and consider the proper way to remedy those wrongs . . . .[,] suggest[ing] Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment." *Ziglar*, 137 S. Ct. at 1865.

Third, the impact on governmental operations system-wide would be significant in expanding *Bivens* to the allegations here. *See id.* 1858 ("[T]he decision to recognize a damages remedy requires an assessment of its impact on governmental operations systemwide."). The system-wide costs include "the burdens on Government employees who are sued personally, as well as the projected costs and consequences to the Government itself." *Id.* "[P]rison officials have broad administrative and discretionary authority over the institutions they manage . . . . [and] administration of a prison is at best an extraordinarily difficult undertaking." *Hewitt v. Helms*, 459 U.S. 460, 467 (1983). Expanding *Bivens* to encompass the allegations Tate makes here would subject federal prison employees to civil litigation for any perceived slight. The burdens on the government, the prison administration, and on the individual employees, who must defend claims

20

often filed without merit and simply for harassment, are great. Therefore, the system-wide impact of expanding *Bivens* liability weighs against expansion.

Last, the Court should consider the harmful effect the creation of a *Bivens* remedy in this context would have on the discharge of official duties. Officials "who face personal liability for damages might refrain from taking urgent and lawful action in a time of crisis." *Ziglar*, 137 S. Ct. at 1863. In the prison context, safety and security are paramount and require staff to make split-second decisions without hesitation. If staff hesitated in their decisions for fear of civil litigation, it could impair the safety and security of our prisons.

The alternative remedies, along with administrative consequences for BOP staff such as loss of employment, demotion, and discipline are sufficient deterrents to individual federal actors to alleviate the concern present in *Bivens* and *Carlson* that a suit against the United States would be insufficient to deter the unconstitutional acts of individuals. While the Supreme Court in *Bivens* created a judicial remedy in part to deter individuals from engaging in unconstitutional wrongdoing, following *Ziglar*, it is clear that Congress, not the judiciary should establish what remedies will best deter individuals from violating the constitutional rights of others. After considering a variety of special factors, they all weigh against expanding *Bivens* to the new context presented here. As such, Tate's Complaint should be dismissed.

**B.  Tate fails to allege any constitutional violation.**

Tate's various allegations each fail because none amounts to a constitutional violation. Without alleging a constitutional violation, Tate cannot state a *Bivens* claim, even if the Court were to expand the availability of a *Bivens* remedy for the facts in Tate's Complaint.

i.      **Tate fails to state a constitutional violation for his retaliation claim.**

Tate's general claims of retaliation for using BOP's administrative remedy process are not linked to his exercise of a constitutional right and therefore fail. *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). "[E]ach retaliatory act [must] violate some constitutional right of an inmate or constitute punishment for the exercise of a constitutional right." *Cochran v. Morris*, 73 F.3d 1310, 1318 (4th Cir. 1996). Moreover, "[i]n the prison context, [courts] treat such claims with skepticism because every act of discipline by prison officials is by definition retaliatory in the sense that it responds directly to prisoner misconduct." *Id.* at 1317.

Tate claims staff retaliated against him for pursuing complaints through the BOP's administrative remedy process. Am. Compl. ¶¶ 1–6, 17–20, 42–45, 64, 66–74, 77, 80–81. The Constitution, however, "creates no entitlement to grievance procedures or access to any such procedure." *Adams*, 40 F.3d at 75. Therefore, any actions taken against him as alleged "retaliation" for pursuing administrative remedies fail to allege he was retaliated against for exercising a constitutional right.

Even if Tate did have a right to the administrative remedy process, Tate alleges the retaliation he suffered was verbal harassment. *See, e.g.*, Am. Compl. ¶ 18 (alleging Counselor Willis called him a "squeaky wheel" and a "filer" for utilizing the ARP). This does not state a viable claim for retaliation. *See Lancaster v. Todd*, 2017 WL 4278785, at *2 (N.D.W. Va. Sept. 27, 2017) ("[B]ecause mere verbal harassment does not give rise to a constitutional violation, Lancaster's allegations that BOP employees cursed at him and used racial slurs do not state a viable claim for retaliation."), *aff'd*, 710 F. App'x 168 (4th Cir. 2018).

Tate alleges the other retaliation he suffered was unjustified searches. Am. Compl. ¶¶ 74, 80. This also does not state a viable claim for retaliation because "prisoners have no legitimate

expectation of privacy." *Hudson v. Palmer*, 468 U.S. 517, 530 (1984).[5] As such, Tate fails to state

a claim for retaliation, even if it were a cognizable claim under *Bivens*.

### ii.    Tate fails to state a constitutional violation related to his property.

Tate alleges parts of his legal property were lost, destroyed, or damaged, giving rise to a

Fifth Amendment Due Process violation. Am. Compl. ¶¶ 46, 47. Damage or loss of inmate

property does not automatically constitute a constitutional violation. *See Daniels v. Williams*, 474

U.S. 327, 329–32 (explaining negligence cannot give rise to a Due Process Clause violation). Tate

does not allege Defendants purposefully destroyed his legal file or materials. He merely alleges

that "[w]hen [he] inventoried [his] legal file/materials upon returning to [his] housing unit, [he]

noticed that [he] was missing several items." Am. Compl. ¶ 46.

Federal statute provides procedures for claims of damage to inmate property, but Tate

never made any such claim with BOP. *See* 31 U.S.C. § 3723(a) ("[The] head of an agency . . . may

settle a claim for not more than $1000 for damage to, or loss of, privately owned property that . . . is

caused by the negligence of an officer or employee of the United States Government acting with

the scope of employment . . . .").[6] A claim for missing property should be submitted to the agency

---

[5]    Although certain searches may violate the Eighth Amendment, the facts alleged here fail
to amount to harassment unrelated to prison needs. Rather, Tate's allegation that Defendants
Hutchins and Robbins asked him to pass through the metal detector three times and then asked
him to remove his shoes to be searched was not unreasonable given the security interest in ensuring
Plaintiff was not carrying contraband. Such actions do not rise to the level of a constitutional
violation. *See, e.g., Proudfoot v. Williams*, 803 F. Supp. 1048 (E.D. Pa. 1992) (finding three
searches within fourteen days did not violate Eighth Amendment when each search was made for
a legitimate purpose).

[6]    This statute is part of the Military Personnel and Civilian Employees' Claim Act, and the
agency's determination of claims final and not subject to review by federal courts. *See Merrifield
v. United States*, 14 Cl. Ct. 180, 183–84 (1988); *Cook v. United States*, 2012 WL 384887, at *3
(D.S.C. Jan. 6, 2012) (personal property claims against the BOP are governed by 31 U.S.C. § 3723
and the government's decisions regarding these claims are not subject to judicial review).

for determination whether administrative settlement is appropriate. Accordingly, the filing of this action to recover damages for any missing property does not allege a constitutional violation.

### iii. Tate failed to allege any injury from the loss of legal mail and denial of access to law library, and thus does not state a constitutional violation.

Tate alleges he was denied access to his legal materials and the law library while housed in the SHU. Am. Compl. ¶¶ 20, 42-44. These claims fail, however, because he has not pled his claims with specificity and has not demonstrated any injury from this alleged restricted access.

Although the Constitution guarantees inmates the right to meaningful access to the courts, to state such a claim, a prisoner must allege some actual injury resulting from a denial of access in order to allege a constitutional violation. *Lewis v. Casey*, 518 U.S. 343, 349–51 (1996). "[T]he inmate therefore must go one step further and demonstrate that the alleged shortcomings . . . hindered his efforts to pursue a legal claim." *Id.* at 351. This requirement can be satisfied by demonstrating a non-frivolous legal claim was frustrated or impeded by some actual deprivation of access. *Id.* at 352–53. Tate has not made any such showing of injury here. Instead, he alleged all of his requests for extensions from courts have been granted and he the claims in his cases were not frustrated or impeded. Am. Compl. ¶¶ 1, 12-13, 17, 20, 42, 79.

Second, "a prisoner cannot rely on conclusory allegations," and "[s]pecificity is necessary so that prison officials are not required to file unnecessary responses to speculative allegations." *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996). "[A] few instances of opening legal mail outside of the presence of the inmate does not indicate a constitutional violation." *Wise v. Samuels*, 2014 WL 1280975, at *3 (E.D. Va. Mar. 26, 2014); *see also Buie v. Jones*, 717 F.2d 925, 926 (4th Cir. 1983) (affirming dismissal where inmate merely alleged a few isolated instances of his legal mail being opened outside his presence). Tate failed to plead with specificity any actual injury related to the alleged unavailability of the law library and his legal property while in the SHU and

the mishandling of his legal mail.[7] While he references delayed receipt of a legal document, a 129-day stay, and less time than he would like to respond to pleadings, he has not shown an inability to proceed with any action. In fact, his ability to make numerous filings demonstrates Tate has adequate access to the courts.

### iv.     False disciplinary reports do not give rise to a constitutional violation.

Tate alleges Defendant Johnson issued a false incident report. Am. Compl. ¶¶ 4–11. "[A] false disciplinary charge cannot serve as the basis for a constitutional claim." *Cole v. Holloway*, 631 F. App'x 185, 186 (4th Cir. 2016) (per curiam). Instead, prisoners "ha[ve] the right not to be deprived of a protected liberty interest without due process of law." *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986); *see also Delk v. Moran*, 2019 WL 1370880, at *14 (W.D. Va. Mar. 26, 2019) ("[T]he mere filing of a false charge itself does not constitute a cognizable claim under § 1983 if the inmate was granted a hearing, and had the opportunity to rebut the unfounded or false charges."). Here, Tate acknowledges he received due process in his DHO hearing. Am. Compl. ¶ 10. Although a retaliatory purpose for a false disciplinary report may give rise to a constitutional claim, Tate does not allege sufficient facts to state such a claim. *See McIntosh v. Freeman*, 66 F.3d 316, 1995 WL 552018, at *1 (4th Cir. Sept. 19, 1995) (per curiam) (noting a retaliatory purpose for a false report may rise to a constitutional violation if adequately pled). As such, he fails to state a constitutional violation in the alleged false reports filed against him.

### v.      Placement in the SHU and consideration for transfer do not give rise to a constitutional violation.

Tate also alleges he was placed in the SHU, remained in the SHU for a longer period of time than other inmates, and was considered for transfer. Am. Compl. ¶¶ 22-40. These claims fail

---

[7]     Although these allegations would amount to BOP policy violations if true, "the violation of BOP guidelines does not create a constitutional violation." *Terrell v. Rupert*, 2011 WL 6046618, at *6 (W.D. Va. Dec. 5, 2011), *aff'd*, 471 F. App'x 206 (4th Cir. 2012).

to amount to a constitutional violation. "[I]nmates do not have a constitutionally-protected right to choose where they are housed." *Maxwell v. Clarke*, 2016 WL 5387796, at *3 (W.D. Va. Sept. 26, 2016). "Further, prisoners do not have a constitutionally recognized liberty interest in a particular security classification nor a constitutional right to be confined in a particular prison." *Rivera v. O'Brien*, 2009 WL 2588345, at *1 (W.D. Va. Aug. 21, 2009). "[C]hanges in a prisoners' location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges—matters which every prisoner can anticipate are contemplated by his original sentence to prison—are necessarily functions of prison management that must be left to the broad discretion of prison administrators to enable them to manage the prisons safely and efficiently." *Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir. 1991).

Tate's allegation that he was wrongfully placed in SHU fails to amount to a constitutional violation because an inmate has no liberty interest in avoiding confinement in administrative segregation. *See Sandin v. Conner*, 515 U.S. 472, 485 (1995) ("Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law."); *Beverati v. Smith*, 120 F.3d 500, 502-04 (4th Cir. 1997) (finding no liberty interest in avoiding administrative segregation). Therefore, Tate fails to allege a constitutional violation for his placement and duration in the SHU and consideration of his transfer.

### vi. Verbal harassment or derogatory language is not a constitutional violation.

Tate complains Defendants used profane and harassing language towards him. Am. Compl. ¶¶ 18, 64, 66–69. But there is "no freestanding constitutional violation in this verbal abuse." *Wagner v. Wheeler*, 13 F.3d 86, 92 (4th Cir. 1993); *see also Henslee v. Lewis*, 153 F. App'x 178, 180 (4th Cir. 2005) (per curiam) ("Mere threats or verbal abuse by prison officials, without more, do not state a cognizable claim under § 1983."); *Alexander v. Parks*, 2019 WL 346425, at *10

(W.D. Va. Jan. 28, 2019) ("[V]erbal assaults and threats do not state a constitutional claim . . . ."); *Lancaster v. Todd*, 2017 WL 4278785, at *2 (N.D.W. Va. Sept. 27, 2017) (4th Cir. 2018) (holding the plaintiff's allegations that BOP employees cursed at him and used racial slurs did not state a viable claim for retaliation), *aff'd*, 710 F. App'x 168. Because Tate's allegations do amount to no more than verbal harassment, he fails to state a constitutional violation.

### vii.   Access to commissary is not a constitutional right.

Tate alleges he was denied access to the prison commissary as a result of the disciplinary proceedings based on a false report of misconduct. Am. Compl. ¶ 10. Prisoners, however, "have no constitutionally protected right to be able to purchase items from the commissary." *Lee v. Dir., Fed. Bureau of Prisons*, 2009 WL 2060116, at *3 (S.D.W. Va. July 8, 2009); *see also Tokar v. Armontrout*, 97 F.3d 1078, 1083 (8th Cir. 1996) ("[W]e know of no constitutional right of access to a prison gift or snack shop."); *Hairston El v. J-Pay Inc.*, 2018 WL 1830737, at *1 (W.D. Va. Apr. 17, 2018) ("Plaintiff does not have a federal right to make voluntary purchases from a commissary or digital provider . . . ."). As such, this allegation also is not a constitutional violation.

### viii.   Tate failed to allege an Eighth Amendment violation.

Tate generally alleges that the various "acts and omissions" in the Complaint resulted in Eighth Amendment violations. Am. Compl. ¶ 83. To show an Eighth Amendment violation, "a prisoner must typically show that a defendant acted, not just negligently, but with 'deliberate indifference.'" *Minneci v. Pollard*, 565 U.S. 118, 129 (2012); *see also Farmer v. Brennan*, 511 U.S. 825, 828 (1994) ("A prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eight Amendment."). To allege "deliberate indifference," the "deprivation alleged must be, objectively, sufficiently serious" and "a prison official must have a sufficiently culpable state of mind." *Id.* at 834. "[A] prison official cannot be found liable under

27

the Eighth Amendment for denying an inmate human conditions of confinement unless the official

knows of and disregards an *excessive risk* to inmate health or safety." *Id.* at 836.

Here, Tate's assertion that the conditions in the SHU are "degenerate" does not rise to the

level of deliberate indifference and does not contain any allegations of excessive risk to Tate's

health and safety.[8] At most, Tate alleges he suffered uncomfortable conditions in the SHU and a

disagreement with what should be allowed in the SHU—policies determined by prison

administrators for safety reasons. Am. Compl. ¶¶ 22–35. *See Strickler v. Waters*, 989 F.2d 1375,

1381 (4th Cir. 1993) ("If a prisoner has not suffered serious or significant physical or mental injury

as a result of the challenged condition, he simply has not been subjected to cruel and unusual

punishment within the meaning of the Amendment."). Additionally, "a prisoner advancing such a

claim must, at a minimum, allege deliberate indifference to his serious needs," *Wilson v. Seiter*,

501 U.S. 294, 297 (1991), and Tate has not alleged such a culpable state of mind of Defendants as

it pertains to the alleged uncomfortable SHU conditions. Therefore, the Complaint fails to state an

Eighth Amendment violation.

### ix. Tate did not allege a due process violation.

Tate also generally alleges that the various "acts and omissions" in the Complaint resulted

in Fifth Amendment violations, but fails to allege any specific due process violations. Am. Compl.

¶ 83. "The Fifth Amendment protects persons from deprivations of life, liberty or property without

due process of law," but "[i]ncarcerated persons have only a narrow range of protected liberty

interests." *Rodriguez v. Ratledge*, 715 F. App'x 261, 266, 267 (4th Cir. 2017) (per curiam). "[A]

prisoner claiming a violation of his right to procedural due process must show: (1) that there is a

'state statute, regulation, or policy [that] creates such a liberty interest,' and (2) that 'the denial of

---

[8]     As discussed in Section II.C, Tate cannot bring claims on behalf of other prisoners.

such an interest 'imposing atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Martin v. Duffy*, 858 F.3d 239, 253 (4th Cir. 2017). "An inmate who fails to satisfy these two requirements *cannot* invoke the procedural protections of the Due Process Clause." *Id.*

Tate failed to show he has a liberty interest that has been denied because federal inmates have no constitutional right to participate in the BOP's administrative grievance proceedings. *See Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) ("As other circuits have recognized, there is no constitutional right to participate in grievance proceedings."). "[T]he federal regulations providing for an administrative remedy procedure do not in and of themselves create a liberty interest in access to that procedure." *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (per curiam). Tate engaged in the administrative remedy process, but did not like the outcome. He did not allege any deprivations of due process associated with those processes. Therefore, Tate has not alleged denial of a liberty interest and has not pleaded a due process violation.

> **x.     Tate failed to make an Equal Protection Clause claim.**

Tate also generally alleges he has been discriminated against and harassed based on his race and sexuality. Am. Comp. ¶¶ 4–5, 81. The Equal Protection Clause provides that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1982). "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). "[T]o state a claim upon which relief may be granted, [Tate] must allege facts sufficient to overcome the presumption of reasonableness applied to prison policies." *Veney v. Wyche*, 293 F.3d 726, 732 (4th Cir. 2002). Further, Tate must "put forward specific, non-

conclusory factual allegations that establish improper motive." *Pronin v. Johnson*, 628 F. App'x 160, 164 (4th Cir. 2015) (per curiam).

Tate has not alleged any specific facts that he has been treated differently than other inmates who are similarly situated. Although he asserts other inmates with worse disciplinary infractions were released from the SHU before him, he does not allege that they were similarly situated (i.e., undergoing similar discipline but of a different race, religion, sexual orientation, etc.), and these allegations are merely vague, conclusory statements. Tate's bare assertions of discrimination, do not provide any facts to support an equal protection claim. Accordingly, Tate fails to state a claim under the Equal Protection Clause.

### C. Respondeat superior liability is unavailable against Breckon and Harmon.

"In a *Bivens* suit, there is no *respondeat superior* liability. Instead, liability is personal, based upon each defendant's own constitutional violations." *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001). Therefore, where a *Bivens* defendant is sued in his supervisory capacity, he is not vicariously liable for the misconduct of subordinate employees. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Nonetheless, a supervisor may be directly liable where he deliberately ignores or tacitly approves of subordinate misconduct. *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990), *overruled in part on other grounds by Farmer v. Brennan*, 511 U.S. 825 (1994). Absent some supporting factual detail, however, vague allegations of a supervisor's awareness of subordinate misconduct are insufficient to state a *Bivens* claim against a supervisor. *See Patel v. Moron*, 897 F. Supp. 2d 389, 401 (E.D.N.C. 2012) (dismissing *Bivens* complaint that failed to allege any direct involvement of supervisors).

Tate alleges mere inaction by Defendant Breckon about Tate's allegedly missing legal materials and Breckon's lack of reprimand to employees for Tate's perceived discrimination. Am.

Compl. ¶¶ 8, 15, 56. The Complaint, however, acknowledges Tate's grievances went through the administrative remedy process. Thus, Tate's claims against Defendant Breckon are merely Tate's dissatisfaction with how Defendant Breckon's staff handled the grievances. *Id.* Tate then alleges Defendant Breckon "brag[ged] that his Special Housing Unit (SHU) is the worst SHU that anybody will ever be in," but he does not allege any specific action Defendant Breckon took that violated Tate's constitutional rights. *Id.* ¶ 22. Instead, he merely alleges that the SHU has "degenerate conditions" under Defendant Breckon's leadership. *Id.* Because these assertions do not claim specific misconduct or a constitutional violation by Defendant Breckon, Tate fails to state a claim against Defendant Breckon.

Tate's mention of Defendant Harmon in the Complaint similarly only alleges Tate's dissatisfaction with his supervision of the administrative remedy process and the denial of Tate's appeal. *Id.* ¶ 60. This allegation is also simply a product of Tate's dissatisfaction with the outcome of his BOP administrative grievance and does not allege a constitutional violation or misconduct by Defendant Harmon. As such, Tate fails to state a claim against Defendant Harmon.

Tate names Defendants Harmon and Breckon solely due to their supervisory positions, and they should be dismissed from this action because respondeat superior liability is unavailable in a *Bivens* suit and Tate has not alleged any specific actions of Harmon or Breckon for the Court to even entertain the possibility of their liability for actions taken by their staffs.

## VI.   Defendants Are Entitled to Qualified Immunity

In addition to sovereign immunity, lack of standing, the Court's lack of personal jurisdiction, failure to exhaust, and Tate's failure to state a claim, Defendants are separately entitled to qualified immunity, warranting dismissal of this action. "[Qualified] immunity protects all but the plainly incompetent or those who knowingly violate the law." *White v. Pauly*, 137 S.

Ct. 548, 551 (2017). In recent years, the Supreme Court "has issued a number of opinions reversing federal courts in qualified immunity cases" because "qualified immunity is effectively lost if a case is erroneously permitted to go to trial." *Id*. As such, it should be addressed early in litigation.

*Saucier v. Katz*, 533 U.S. 194, 201 (2001), established a two-pronged test for qualified immunity. The first prong considers whether the facts show that the officer's conduct violated a constitutional right. *Id.* The second prong examines whether that the right was clearly established. *Id.* To survive a motion to dismiss, "a court must decide whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Here, Tate has not alleged Defendants violated a constitutional right, as thoroughly discussed in Section V, and thus, qualified immunity requires dismissal of the Complaint.

## CONCLUSION

For the foregoing reasons, this action should be dismissed.

Respectfully submitted,

THOMAS T. CULLEN
United States Attorney

Date: May 26, 2020            */s/ Krista Consiglio Frith*
Krista Consiglio Frith
Virginia State Bar No. 89088
Assistant United States Attorney
Western District of Virginia
Post Office Box 1709
Roanoke, Virginia 24008-1709
Telephone: (540) 857-2250
E-mail: Krista.frith@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 26, 2020, I caused a true copy of the foregoing Memorandum in Support of Defendants' Motion to Dismiss the Amended Complaint to be electronically filed with the Clerk of the Court using the CM/ECF system, and mailed a copy thru the United States Postal Service to the following non-CM/ECF participant:

Raymond Tate
Inmate No: 27381-001
U.S.P. Lee
P.O. Box 305
Jonesville, VA 24263

*/s/ Krista Consiglio Frith*
Krista Consiglio Frith
Assistant United States Attorney