**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

| | | |
|---|---|---|
| **RAYMOND TATE,** | ) | Civil Action No. 7:19-cv-00609 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| **D.J. HARMON,** *et al.*, | ) | By: Norman K. Moon |
| Defendants. | ) | Senior United States District Judge |

This civil action was filed by plaintiff Raymond Tate, a federal inmate proceeding *pro se*. In his amended complaint (Dkt. No. 37), he asserts various claims pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). There are a number of motions pending in the case, and this memorandum opinion addresses all of them. A separate order will be entered setting forth the rulings below.

### I.    PENDING MOTIONS

**A. Tate's motion for reconsideration and motion to supplement (Dkt. Nos. 75, 77)**

By order entered on June 25, 2020 (Dkt. No. 71), the court denied Tate's motion for preliminary injunction. Tate then filed a motion for reconsideration and also a motion to supplement his motion for reconsideration. I will grant the motion to supplement (Dkt. No. 77) and has considered the additional arguments Tate raises therein. I also have considered defendants' response in opposition to the motion to reconsideration (Dkt. No. 81) and Tate's reply (Dkt. No. 84).

Because the order on the preliminary injunction was an interlocutory ruling, Tate's motion for reconsideration is governed by Federal Rule of Civil Procedure 54. In pertinent part, Rule 54(b) provides that "any order or other decision . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action . . . and may be revised at any time before the entry of a judgment . . . ." Fed. R. Civ. P. 54(b).

The Fourth Circuit has explained that "every order short of a final decree is subject to reopening at the discretion of the district judge" and that reconsideration of such orders is "not subject to the strict standards applicable to motions for reconsideration of a final judgment." *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514–15 (4th Cir. 2003) (citations omitted). Instead, "a court may revise an interlocutory order under the same circumstances in which it may depart from the law of the case: (1) 'a subsequent trial produc[ing] substantially different evidence'; (2) a change in applicable law; or (3) clear error causing 'manifest injustice.'" *Carlson v. Boston Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017) (citations omitted); *see also Wootten v. Commonwealth of Virginia*, 168 F. Supp. 3d 890, 893 (W.D. Va. 2016) (setting forth factors and describing first as requiring "new evidence that was not previously available").

Tate's motion for preliminary injunction was denied because he had not shown that he was likely to suffer imminent, irreparable harm. (*See generally* Order, Dkt. No. 71.) I have considered the arguments in Tate's motion to reconsider and supplement, but conclude that he has failed to point to any new evidence that was previously unavailable or to any change in the law. Further, and despite Tate's contentions that I "overlook[ed] controlling decisions," (Mot. to Recons. 1) and that there was "clear error" in the prior order, I do not see any "clear error causing 'manifest injustice'" in that order. *Cf. Carlson*, 856 F.3d at 325.

In short, nothing in Tate's motion to reconsider or his supplement causes me to conclude that my prior ruling was erroneous or needs to be reconsidered.[1] Accordingly, Tate's motion for reconsideration (Dkt. No. 75) will be denied.[2]

---

[1] Tate correctly notes that the order mistakenly omitted a "not" in the first sentence of its final paragraph, which—based on the entirety of the order—obviously was a typographical error. Accordingly, the court's order (Dkt. No. 71) will be amended so that the first sentence of the final paragraph reads that Tate's allegations "do *not* constitute a 'clear showing' that he will suffer irreparable harm . . . ."

[2] Tate's request for preliminary injunctive relief is also mooted by the court's dismissal of his claims.

**B. Tate's Motion to Amend (Dkt. No. 69)**

The parties previously had briefed defendants' motion to dismiss Tate's original complaint. Thereafter, Tate filed an Amended Complaint as permitted by Federal Rule of Civil Procedure 15. The court thus denied defendants' first motion to dismiss as moot, and they then filed another motion to dismiss. Subsequently, Tate filed a second amended complaint. He claims that he had permission to do so, but he is incorrect. The court did not grant him permission to file a second amended complaint; it merely granted him leave to amend to substitute a named party for one of the John Doe parties. (Dkt. No. 57.)[3]

His second amended complaint, however, goes beyond that substitution. In addition to minor changes in words or sentences that do not change the substance of his claims, Tate's second amended complaint adds some additional allegations regarding his pursuit of administrative remedies and also adds allegations about events occurring in May and June 2020, after the initial complaint was filed, that he contends are additional allegations of retaliation.

Although "[t]he court should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), leave to amend may be denied, among other circumstances, where "the amendment would [be] futile." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (en banc) (citation omitted). A proposed amendment is futile when it "is clearly insufficient or frivolous on its face" and thus would be subject to dismissal. *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986). Here, amendment would be futile because the allegations that Tate proposes to add do not save his claims from dismissal. In particular, even considering Tate's proposed amendments, most of his claims still are not cognizable and he still fails to state an Eighth Amendment excessive force claim,

---

[3] Tate thereafter filed a notice (not a motion) stating that he wanted to amend his complaint to name Bates in place of John Doe and make other amendments. He argues that defendants conceded by not opposing that notice (Reply at 1), but he provides no authority for that contention. I cannot conclude that defendants waived any opportunity to object to a second amended complaint without a motion having been filed and without ever having seen the proposed second amended complaint. After Tate filed his second amended complaint, defendants timely objected to it.

which are the reasons for the dismissal of this action. Thus, his motion to amend (Dkt. No. 69) will be denied because amendment would be futile.

### C. Defendants' Motions to Dismiss (Dkt. Nos. 49, 79)

There are two pending motions to dismiss. The first was filed on behalf of all defendants except defendant Bates, who had not yet been identified. (Dkt. No. 49.) The second was filed separately by Bates. (Dkt. No. 79.) In it, he joins in his co-defendants' motion. Bates also argues that the court lacks subject-matter jurisdiction over the claim against him, that he is entitled to qualified immunity, and that Tate fails to state a claim for which relief can be granted.

For their part, the other defendants make numerous arguments in support of their motion to dismiss. (*See* Mem. Supp. Mot. Dismiss 2–3 (Table of Contents), Dkt. No. 50.) In general terms, these include that: (1) Tate lacks standing, (2) Tate failed to exhaust his claims as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), (3) Tate's allegations are not cognizable under *Bivens*, (4) Tate fails to allege any constitutional violation, and (5) defendants are entitled to qualified immunity. (*See generally id.*)

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–80 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–63 (2007); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the nonmoving party." *Massey v. Ojaniit*, 759 F.3d 343, 347 (4th Cir. 2014). But a court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano*, 521 F.3d at 302.

**1. Background**

Tate's first amended complaint names the United States "as a defendant for purposes of injunctive relief only," (Am. Compl. at 1 n.1.), and identifies twelve individual defendants. He asserts claims under the First, Fifth, and Eighth Amendment against all defendants. As correctly summarized by defendants, Tate's claims are based on allegations that staff at USP Lee have:

> (1) retaliated and discriminated against him and other inmates in BOP custody, (2) falsified an incident report against him, (3) used abusive language towards him, (4) placed him in the Special Housing Unit (SHU), (5) referred him to the FBI for consideration for prosecution on false charges, (6) restricted his access to commissary as a result of false incident reports, (7) deprived him of his legal materials and hindered his access to the courts, (8) blocked his access to the administrative remedy process, (9) interfered with his legal mail, (10) lost his legal property, (11) refused to assist him in transporting his legal property, (12) subjected him to consideration for transfer, (13) harassed and discriminated against him based on his sex and race, (14) generally retaliated against him in these manners as a result of him filing law suits regarding the circumstances of his incarceration; and (15) subjected him to uncomfortable conditions in the SHU, such as uncleanliness, [excessively] cold temperatures, cancelling recreation time, [an] uncomfortable mattress, and [inadequate amounts of] toilet paper [and] toothpaste.

(Mem. Supp. Mot. to Dismiss, Dkt. No. 50 at 5–6.) Tate also makes general allegations about there being a "conspiracy" among defendants to deny his rights.[4] Additionally, the claims added against Bates allege that Bates spread a rumor among inmates that Tate attempted to engage in sexual acts with male members of USP Lee staff, and that Bates made "sexual noises" while distributing hygiene products to Tate's cell and "squirted [Tate's] body wash on [the] cell floor," causing Tate to be "without hygiene for the entire week." (Am. Compl. ¶ 68.) Notably, many paragraphs of Tate's amended complaint discuss incidents that occurred to other inmates or general statements about what staff does to inmates or to SHU inmates, but do not allege facts specific to him.

---

[4] The court will not discuss the details of many of these claims, because, as discussed next, most of the claims may not be brought as a matter of law and there is thus no need to delve into the details. The facts underlying the claim that may be cognizable under *Bivens*—an Eighth Amendment excessive force claim—are discussed in context below.

2. Discussion

   a. **Availability of *Bivens* Remedy**

I focus first on defendants' contention that none of Tate's claims entitle him to a *Bivens* remedy because they fall outside the scope of cases where such a remedy has been, or should be, recognized. Defendants are correct that *Bivens* and its progeny provide only a limited remedy against federal officials in limited circumstances. Thus, although Tate relies heavily on cases involving claims brought under § 1983 against state officials, and while those cases are relevant in describing the elements of certain constitutional claims, those cases do not speak to the threshold issue of whether there is a remedy available under *Bivens*. *Tun-Cos v. Perrotte*, 922 F.3d 514, 520–23 (4th Cir. 2019), *cert. denied*, 140 S. Ct. 2565 (2020) (recognizing that although plaintiffs' allegations could give rise to a § 1983 action, they did not state a *Bivens* claim).

As the Fourth Circuit recently has explained, the Court in *Bivens* held that there was an implied claim for money damages available under the Fourth Amendment where the plaintiff alleged that federal officers had searched his apartment and arrested him without a warrant or probable cause and used unreasonable force in doing so. *Tun-Cos*, 922 F.3d at 520 (describing *Bivens*). In the decade following, the Court extended *Bivens* only to two other factual situations:

> In the first, *Davis v. Passman*, 442 U.S. 228 (1979), the Court held that the equal protection component of the Fifth Amendment's Due Process Clause provided a damages remedy for an administrative assistant who alleged that a Congressman fired her because she was a woman. *See id.* at 248–49. And in the second, *Carlson v. Green*, 446 U.S. 14 (1980), the Court held that the Eighth Amendment's Cruel and Unusual Punishments Clause provided a damages remedy for the estate of a prisoner who died due to the alleged failure of federal jailers to treat his asthma. *See id.* at 19.

*Tun-Cos*, 922 F.3d at 521. Since then, however, the Supreme Court has not recognized a *Bivens*-

type remedy outside of those contexts. *Id.* (collecting authority).[5] Accordingly, the Supreme Court "has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Id.* at 522 (quoting *Iqbal*, 556 U.S. at 675).

The Supreme Court has directed lower courts to employ a two-step process in determining whether to recognize an implied cause of action as in *Bivens*. First, the court must determine whether the facts of the case arise in a "new *Bivens* context." *Tun-Cos*, 922 F.3d at 522 (citing *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857–60 (2017)). "If the context is *not* new . . . then a *Bivens* remedy" is available. *Id.* at 522–23 (emphasis in original). If the context is new, then the court turns to the second step, which requires it to determine whether there are "special factors counselling hesitation" in recognizing an implied cause of action. *Ziglar*, 137 S. Ct. at 1857 (citations omitted).

In determining whether a context is new (the first inquiry), it is significant that "*Bivens* actions are not recognized Amendment by Amendment in a wholesale fashion"; instead, they "are context-specific." *Wilson v. Libby*, 498 F. Supp. 2d 74, 86 (D.D.C. 2007), *aff'd*, 535 F.3d 697 (D.C. Cir. 2008). "For example, a *Bivens* action alleging a violation of the Due Process Clause of the Fifth Amendment may be appropriate in some contexts, but not in others." *F.D.I.C. v. Meyer*, 510 U.S. 471, 484 n.9 (1994). Thus, the mere fact that Tate alleges violations of some of the same Amendments as in *Bivens*, *Davis*, or *Carlson*, is not dispositive.

Furthermore, the context could be "new" for a reason as simple as "the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the

---

[5] The Supreme Court also "may have recognized a fourth *Bivens* context in *Farmer v. Brennan*, [511 U.S. 825 (1994),] which sustained a prisoner's Eighth Amendment claim for damages against federal prison officials for fail[ing] to protect" him from violence by other prisoners and instead placing him in general population at a higher-security facility, where he was raped and attacked. *Attkisson v. Holder*, 925 F.3d 606, 621 n.6 (4th Cir. 2019). It does not appear that the defendants in *Farmer* challenged the availability of a *Bivens* remedy, however. *See generally Farmer*, 511 U.S. 825; *see also Hicks v. Ferreyra*, 965 F.3d 302, 309–12 (4th Cir. 2020) (noting that a district court is not obligated to address *sua sponte* the issue of whether a claim arose in a new *Bivens* context and that defendants had waived the issue by failing to raise it before the district court).

extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; [and] the risk of disruptive intrusion by the Judiciary into the functioning of other branches . . . ." *Tun-Cos*, 922 F.3d at 523 (quoting *Ziglar*, 137 S. Ct. at 1859–60)). Put differently, "the new-context inquiry is easily satisfied." *Ziglar*, 137 S. Ct. at 1865.

Applying this analysis to Tate's claims, I conclude that his First Amendment claim, Fifth Amendment claim, and Eighth Amendment claim challenging his conditions of confinement all arise in a context different than the claims previously recognized by *Bivens*, *Davis*, or *Carlson*. Notably, the Supreme Court has "never held that *Bivens* extends to First Amendment claims." *Reichle v. Howard*, 566 U.S. 658, 663 n.4 (2012). Thus, Tate's First Amendment retaliation claims and any claim that he was denied access to the courts clearly arise in a new context.

Tate's Fifth Amendment claims alleging violations of due process in prison disciplinary proceedings, deprivation of property, challenging his housing placement, and alleging an equal protection violation based on his sex and race,[6] are all quite unlike the firing of a Congressional employee because of her sex, which was the Fifth Amendment claim recognized in *Davis*.

Tate's Eighth Amendment claims challenging his conditions of confinement also arise in a new context. *Carlson* involved a prison official's deliberate indifference to an inmate's health in failing to provide medical care, where that failure allegedly resulted in the inmate's death. Likewise, to the extent *Farmer v. Brennan* was an extension of *Bivens*, *see supra* note 5, the claims in *Farmer* arose in a different context. The plaintiff there alleged deliberate indifference by prison officials in the context of a failure-to-protect claim, where the prisoner was raped and assaulted by another prisoner. That is different from Tate's Eighth Amendment claim. As noted, Tate's claims is premised on conditions in the SHU, and his allegations that the cells were unsanitary, cold, and

---

[6] Furthermore, for the reasons set forth by defendants, Tate has failed to allege facts sufficient to state an equal protection claim. (Dkt. No. 50 at 29–30.)

extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; [and] the risk of disruptive intrusion by the Judiciary into the functioning of other branches . . . ." *Tun-Cos*, 922 F.3d at 523 (quoting *Ziglar*, 137 S. Ct. at 1859–60)). Put differently, "the new-context inquiry is easily satisfied." *Ziglar*, 137 S. Ct. at 1865.

Applying this analysis to Tate's claims, I conclude that his First Amendment claim, Fifth Amendment claim, and Eighth Amendment claim challenging his conditions of confinement all arise in a context different than the claims previously recognized by *Bivens*, *Davis*, or *Carlson*. Notably, the Supreme Court has "never held that *Bivens* extends to First Amendment claims." *Reichle v. Howard*, 566 U.S. 658, 663 n.4 (2012). Thus, Tate's First Amendment retaliation claims and any claim that he was denied access to the courts clearly arise in a new context.

Tate's Fifth Amendment claims alleging violations of due process in prison disciplinary proceedings, deprivation of property, challenging his housing placement, and alleging an equal protection violation based on his sex and race,[6] are all quite unlike the firing of a Congressional employee because of her sex, which was the Fifth Amendment claim recognized in *Davis*.

Tate's Eighth Amendment claims challenging his conditions of confinement also arise in a new context. *Carlson* involved a prison official's deliberate indifference to an inmate's health in failing to provide medical care, where that failure allegedly resulted in the inmate's death. Likewise, to the extent *Farmer v. Brennan* was an extension of *Bivens*, *see supra* note 5, the claims in *Farmer* arose in a different context. The plaintiff there alleged deliberate indifference by prison officials in the context of a failure-to-protect claim, where the prisoner was raped and assaulted by another prisoner. That is different from Tate's Eighth Amendment claim. As noted, Tate's claims is premised on conditions in the SHU, and his allegations that the cells were unsanitary, cold, and

---

[6] Furthermore, for the reasons set forth by defendants, Tate has failed to allege facts sufficient to state an equal protection claim. (Dkt. No. 50 at 29–30.)

contained uncomfortable mattresses, and that he was denied recreation time and given inadequate amounts of toilet paper and toothpaste. His conditions-of-confinement claim thus arises in a new context.

As to any excessive force claim under the Eighth Amendment, there are at least two pre-*Ziglar* cases in which the Fourth Circuit appeared to recognize that *Bivens* provided a remedy for such a claim where the force occurred at a federally-run prison,[7] apparently in an extension of the claim in *Carlson*. *E.g.*, *Hill v. Crum*, 727 F.3d 312 (4th Cir. 2013) (reversing jury verdict for plaintiff because defendant was entitled to qualified immunity, but not questioning whether *Bivens* supplied a remedy); *see also Williams v. Calton*, 551 F. App'x 50 (4th Cir. 2013) (same). In both of these cases, however, the court did not squarely address whether *Bivens* supplied a remedy. In a more recent case, another judge of this court stated, without analysis, that "the Supreme Court has recognized an implied cause of action for damages against individual federal prison officials" under the Eighth Amendment with regard to "excessive force and deliberate indifference to serious medical needs." *Sinkfield v. Fed. Bureau of Prisons*, No. 7:20CV00149, 2020 WL 2060340, at *1 (W.D. Va. Apr. 29, 2020). In this case, however, it is unnecessary to determine whether Tate's excessive force claim arises in a new context or whether, if not, a *Bivens* remedy should be implied. Instead, I will assume for purposes of this opinion that *Bivens* would provide a remedy for an Eighth Amendment excessive force claim by Tate. Regardless, Tate's claim fails because he has not alleged adequate facts to state such a claim, as discussed in the next section of this opinion.

Having found that Tate's First, Fifth, and Eighth Amendment conditions-of-confinement claims all arise in a new context, I turn next to whether there are special factors cautioning against expanding the implied remedy of money damages in these contexts. For several reasons, I conclude

---

[7] The Supreme Court has expressly declined to extend *Bivens* to provide a remedy to a federal prisoner alleging an Eighth Amendment violation against a private prison operator, *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 63 (2001), and against guards at a privately operated federal prison *Minneci v. Pollard*, 565 U.S. 118, 120 (2012).

that there are special factors counselling hesitation, such that Congress "might doubt the efficacy or necessity of a damages remedy" for these claims. *Ziglar*, 137 S. Ct. at 1858.

First, there are alternative remedies available to Tate, which strongly cautions against an expansion of *Bivens* into a new context. *Ziglar*, 137 S. Ct. at 1858 ("[I]f there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action."). For example, as noted in *Correctional Services Corp. v. Malesko*, a federal prisoner claiming negligence or deliberate indifference has access to "remedial mechanisms established by" the BOP. 534 U.S. 61, 74 (2001). Indeed, "many courts have explicitly recognized that the BOP's administrative remedy program is an alternative process that precludes a *Bivens* remedy." *Scates v. Craddock*, No. 1:17CV22, 2019 WL 6462846, at *8 (N.D.W. Va. July 26, 2019) (collecting authority), *report and recommendation adopted*, No. 1:17-CV-22, 2019 WL 4200862 (N.D.W. Va. Sept. 5, 2019).

State tort law also may provide an alternative means of relief to Tate. In this respect, Tate's circumstance is different from *Bivens*, where state tort remedies were "'inconsistent or even hostile' to a remedy inferred from the Fourth Amendment." *Malesko*, 534 U.S. at 73 (quoting *Bivens*, 403 U.S. at 393–94). The availability of these other remedies strongly cautions against an expansion of the *Bivens* remedy here.

Second, as defendants point out and the Supreme Court has recognized, Congress's inaction and failure to provide a damages remedy, particularly where it has acted to enact sweeping reforms of prisoner litigation, suggest that an extension of a damages remedy for other types of mistreatment should not be judicially created. *See Ziglar*, 137 S. Ct. at 1865 ("[I]t seems clear that Congress had specific occasion to consider the matter of prisoner abuse and consider the proper way to remedy those wrongs" and Congress's declining to provide a "damages remedy against federal jailers . . . suggests [that] Congress chose not to extend the *Carlson* damages remedy to cases involving other

types of prisoner mistreatment.").

Other courts, too, have reached the same conclusion and rejected a *Bivens* remedy for similar claims brought by federal prisoners. *E.g.*, *Mack v. Yost*, 968 F.3d 311 (3d Cir. 2020) (First Amendment retaliation claim); *Johnson v. Burden*, 781 F. App'x 833 (11th Cir. 2019) (same); *Schwarz v. Meinberg*, 761 F. App'x 732 (9th Cir. 2019) (First Amendment, Fifth Amendment, and Eighth Amendment claim regarding unsanitary cell conditions); *Vega v. United States*, 724 F. App'x 536 (9th Cir. 2018) (First Amendment claim alleging denial of right of access to courts and Fifth Amendment claim arising out of a prison disciplinary process); *Mays v. Smith*, No. 5:18-CT-3186-FL, 2020 WL 5821841, at *13 (E.D.N.C. Sept. 30, 2020) at *13 (First Amendment retaliation claim, Fifth Amendment due process claim, and Fifth Amendment claim for racial discrimination), *appeal docketed*, No. 20-7540 (4th Cir. Oct. 19, 2020); *Williams v. Lynch*, No. 1:16-cv-3043-DCC, 2018 WL 4140667, at *4 (D.S.C. Aug. 30, 2018) (claims of "retaliation, denial of access to courts, [and] unconstitutional conditions of confinement under the First, Fifth, and Eighth Amendments") (internal footnote omitted);[8] *Kirtman v. Helbig*, No. 4:16-cv-2839-AMQ, 2018 WL 3611344, at *5 (D.S.C. July 27, 2018) (First Amendment retaliation claim). *See also Fuquea v. Mosley*, No. 1:19-1392-HMH-SVH, 2020 WL 3848150, at *6–7 (D.S.C. Mar. 6, 2020) (concluding that a prisoner's Eighth Amendment conditions-of-confinement claim could not be brought under *Bivens* and assuming, without deciding, that the deliberate indifference claim could be, but dismissing it because plaintiff failed to present sufficient evidence to survive summary judgment), *report and recommendation adopted*, 2020 WL 1899493 (D.S.C. Apr. 16, 2020).

For the above reasons, the court declines to recognize a new remedy in any of the new contexts in which Tate's claims arise, including his First Amendment and Fifth Amendment claims,

---

[8] *Williams* was reconsidered by the district court in a subsequent order, which altered other portions of the original opinion, but denied reconsideration as to the availability of a *Bivens* remedy. *See Williams v. Bennett*, No. 1:16-cv-3043-DCC, 2019 WL 1614829, at *2 (D.S.C. Apr. 16, 2019).

11

as well as any conditions-of-confinement claim under the Eighth Amendment.

### b. Tate's Eighth Amendment excessive force claim fails to allege a constitutional violation.

As already noted, I will assume, without deciding, that a *Bivens*-like damages remedy is available generally for an Eighth Amendment excessive force claim. Nonetheless, Tate's claim is subject to dismissal because his factual allegations fail to state a claim under the Eighth Amendment.[9]

An Eighth Amendment excessive force claim requires—at a minimum—a "nontrivial" use of force. *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010). There is no allegation of force by Tate, trivial or otherwise. Indeed, Tate's amended complaint is more than twenty hand-written pages and includes significant detail about specific events that occurred and actions taken against him. Critically, nowhere in that complaint does he allege that any defendant used physical force against him. Instead, he alleges retaliation and harassment in the form of inappropriate, sexual, and/or racist comments. But verbal harassment by correctional officers alone—while abhorrent and unprofessional—does not violate the Eighth Amendment. *Henslee v. Lewis*, 153 F. App'x 178, 179 (4th Cir. 2005) ("Mere threats or verbal abuse by prison officials, without more, do not state a cognizable [Eighth Amendment] claim . . . ."). *See also Morva v. Johnson*, No. 7:09-cv-00515, 2011 WL 3420650, at *7 (W.D. Va. Aug. 4, 2011) (collecting authority for the proposition that "[v]erbal harassment or idle threats to an inmate, even to an extent that it causes an inmate fear or emotional anxiety," do not give rise to a due process violation or an Eighth Amendment violation). Thus, Tate fails to state a viable Eighth Amendment claim and so any *Bivens* claim based on such verbal harassment, assuming there is otherwise a remedy for Eighth Amendment excessive-force claims, fails to state a claim for which relief can be granted.

---

[9] Defendants also contend that Tate has failed to exhaust his administrative remedies, although Tate claims—despite his ability to file a number of grievances and appeals—that the process was unavailable to him. In light of my rulings herein, I do not address exhaustion.

For all of the foregoing reasons, the court will grant defendants' motions to dismiss and dismiss Tate's complaint in its entirety.

### D. Motions Related to Substitution (Dkt. Nos. 85, 90)

Subsequent to the filing of Tate's case, defendant Darrin "D.J." Harmon died. Tate then filed a motion requesting to substitute Harmon's estate as a party (Dkt. No. 85), a motion on which defendants take no position. Pursuant to Federal Rule of Civil Procedure 25(a), the court will grant the motion to substitute (Dkt. No. 85), and will substitute The "Estate of Darrin Harmon" as a defendant in place of defendant Harmon. In light of that motion, Dkt. No. 90 (which simply requests a ruling on the motion to substitute) will be denied as moot.

Nonetheless, Tate's claims against the estate fail for the same reasons that his claims against all defendants fail. Thus, the court will dismiss all claims against the estate pursuant to 28 U.S.C. § 1915A(b)(1), for failure to state a claim upon which relief may be granted.

## II. CONCLUSION

An appropriate order will be entered setting forth the above rulings. In summary, Tate's motion to supplement (Dkt. No. 77) and motion to substitute (Dkt. No. 85) will be **GRANTED**. All of Tate's other pending motions will be **DENIED** (Dkt. Nos. 69, 75) or **DENIED AS MOOT** (Dkt. No. 90). Defendants' motions to dismiss (Dkt. Nos. 49, 79) will be **GRANTED**, the claims against the newly-substitute defendant Estate of Darrin Harmon will be summarily **DISMISSED** for failure to state a claim, and this case will be **STRUCK** from the active docket of the court.

**ENTER**: This __7th__ day of December 2020.

_Norman K. Moon_
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE